Smith, J.
In an action brought by Whitacre in the court of common pleas of this county, against Wilson, to recover damages for the writing and publication of what was claimed to be a false and malicious libel, the 'jury returned a verdict in favor of the plaintiff, assessing his damages at $300, on which the court rendered judgment. It is now sought to reverse this judgment, and the errors assigned are, that the trial court refused to give to the jury a certain special charge asked for by the counsel for the defendant, and also erred in the charge actually given to the jury on the same subject.
The following facts are admitted by the pleadings. Wilson was a memberbf the Bar of this state, engaged in the practice of the law, and Whitacre was a student of the law, preparing himself for admission to the bar, and had been for some time *16 in the law office of Wilson, under his instruction, and was assisting him in his office business, particularly during the sickness of Wilson. About the time that Whitacre applied to the supreme court to be examined for admission to the Bar, and had obtained from another attorney-at-law a certificate in the form prescribed by the statute, a difficulty having arisen between the two as to the manner in which their business had been conducted (Wilson claiming that Whitacre had acted dishonestly in regard thereto), the former wrote a letter or communication, and sent it to the -clerk of the supreme court in the manner hereinafter stated. .A copy of this paper is set out in the petition, and it is unnecessary to give it here. It is sufficient to say that it is a jprotest against the admission of Whitacre to theBar, andcon■•tains charges against his integrity, which, if true, ought to have prevented his admission, and if false, and maliciously made, would have entitled the plaintiff in this action to recover damages therein, unless it further appeared that the writing and publishing thereof, were absolutely privileged under the circumstances of the case. ' It further appears by ithe pleadings that this communication was received and acted upon by the court, and the plaintiff not permitted to be •examined, until he should vindicate himself from the charges.
At the trial of this case, the counsel for the defendant asked the court to charge the jury, “ that if they found from •the evidence ” (and the bill of exceptions taken, clearly shows that evidence was offered which tended to prove each fact set out in the charge as requested) ,c that the communication written by the defendant, and a copy of which is set forth in the petition in this cause, was placed by him in a sealed envelope, which was enclosed, together with a letter from the defendant to the clerk of the Supreme Court of Ohio in another envelope, which was sent by the defendant by mail to said clerk at Columbus Ohio, and which letter requested said clerk to deliver said written communication to the proper authorities, and that the said clerk thereupon directly passed the same into the hands of the supreme court, then the writing and sending of said written communication by the defendant,' as aforesaid, was what is known in the law as a case of abso *17 lute privilege, and said written communication was absolutely privileged, and the plaintiff is not entitled to recover any amount whateverfrom the defendant in this action, and your verdict must be for the defendant.”
This charge the court refused to give, but did charge the jury, that if they found the foregoing facts to be true, it was a conditional privilege only; and that if the statements in said communication were both false and malicious, they should find for the plaintiff.
The only question for consideration then is, whether this communication was, under the circumstances stated, an absolutely privileged one. If it was, the court erred; if not, the instruction given was correct.
The definition of the different kinds of privileged communications, given by Bigelow in his work on Torts, page 52, is this: “ A communication is absolutely privileged when the fact that it was published with actual provable malice, that is malice in fact, is immaterial not affecting the excuse. In other words, a communication is absolutely privileged when evidence that it was published with actual malice is not admissible. A communication is prima facie privileged, when evidence on the part of the plaintiff is admissible to show that the communication was published with actual malice, In the former case the defense, if true, is a perfect one, and cannot be disturbed; in the latter case, it is perfect, provided evidence of malice be not offered by the plaintiff.
And the same author, page 84, states when, and the circumstances under which, communications are absolutely privileged, thus: “No action either for slander or libel can be maintained against a judge, magistrate or person sitting in a judicial capacity over any court, judicial or military, recognized by and constituted according to law; nor against suitors, prosecutors, witnesses, counsel or jurors for anything said or done relative to the matter in hand, in the ordinary course of a judicial proceeding, investigation or inquiry, civil or criminal, by or before any such tribunal, however false and malicious it may be.” And in Starkie on Slander, Folkard’s Ed. 259, the rule is thus stated : “ And accordingly the law, without regard to the question of intention, and on grounds *18 of obvious policy, repels the claim to damages in respect of any publication, whether oral or written, made in the course of a judicial proceeding, whether civil or criminal; and this rule applies to judges, juries, witnesses, suitors, and prosecutors in respect of anything stated by them in the course of a judicial proceeding.”
We have seen no decision of the Supreme Court of this State which conflicts with or modifies this doctrine of the common law. In the case of Lanning v. Christy, 30 Ohio St. 115, while it was not necessary for the court to pass upon the precise question, the judge delivering the opinion, cited with apparent approval, a number of the authorities which hold that statements made in the usual course of judicial proceedings, whether of witnesses, counsel or otherwise, are not the subject of an action of slander or libel, though “ scandalous, false and malicious.” And in the case of Liles v. Gaster, 42 Ohio St. 631, it is expressly held, that when false, malicious and defamatory words are spoken of another by a witness on the trial of a case, and relevant thereto, they are absolutely privileged, so far as an action for slander is concerned. And in this case, also, the court cites authorities which fully sustain the doctrine hereinbefore announced, and which give the reason of public policy on which it is founded. And in closing the opinion the judge says: “This being so, public policy demands that he should be protected, even though he was actuated by malice, as well as a purpose to perform a duty imposed by law upon him as a witness.”
Accepting this as the law of Ohio, the further question for decision is whether this communication comes within it, as having been made to a court of justice having jurisdiction of the subject matter, in the course of a judicial proceeding, inquiry or investigation, and relevant thereto, and was made by the defendant while acting as a suitor, witness or prosecutor, or in any other capacity which brings him within the rule.
Our understanding of the law is, that the granting of the privilege to persons'to practice law, and for good cause shown to deprive them of such privilege, has always been exercised by courts of the highest jurisdiction, and considered as a judicial act. Sec. 13 Wallace (U. S.), 354. The right of the courts *19 to admit to membership of the Bar, has from the organization of our state government, been conferred upon them by statute. Under our present law, it can be done only by the Supreme Court of the State, while the right to suspend or remove an attorney from his office for good cause is also conferred upon the Circuit and Common Pleas Courts, and the mode in which this is to be done, is clearly pointed out, and is in the nature of an adversary proceeding, in which evidence may be heard, an appeal taken, &c. There are no such express statutory provisions for a hearing or trial of any question arising on the application of a person to be admitted to the Bar. The law simply makes it necessary to pass an examination before the court, or the commission appointed for that purpose, that the applicant shall have certain qualifications as to age and citizenship, and should produce a certificate from an attorney-at-law setting forth that he is of good moral character, and the other matters pointed out by the statute, or the certificate of a committee appointed under Sec. 561, to examine the graduates of a law school, “ and thereupon he shall be examined touching his fitness and qualifications,” and if on such examination the court or judges are satisfied that he is of good moral character ’* * * “an oath of'office shall be administered to him, and an order shall be made on the journal, that the applicant be admitted to practice as an attorney and counselor-at-law in all courts of record of the state.” Rev. Stat. 559.
The court being thus bound to find that the applicant is of good moral character, and has the other qualifications pointed out in the statute before he can be admitted to the Bar, there can be no question, we think, but that in doing so, it acts judicially. And no mode being-.pointed out in the statute, by which these facts are to be ascertained, if so disposed the court could doubtless call before it witnesses, and examine them, orally or by affidavit or otherwise, as it might decide. And if this were done in a particular instance, we.have no doubt that a statement or testimony so made of given, would be absolutely privileged.
No such course, however, was pursued in this case, It is one where a person without being called upon by the court before *20 which the] proceedings were pending, voluntarily and of his own motion, made a statement which was unquestionably relative and pertinent to the matter under consideration by the court. He was certainly not a party to the proceeding; his position was more analogous to that of a prosecutor in a criminal case, orto that of a witness examined in court, or who voluntarily gives an affidavit therein, pertinent to the case. And the question is, do the same considerations of public policy which exempt such persons from an action for libel or slander therefor, apply in a case like the one under consideration ? It is certainly a matter of great importance to the welfare of society, that unworthy men should not be allowed' to become members of the Bar; and the duty is imposed by the law upon the Supreme Court of the State, acting as a court, to decide whether any particular applicant has a good moral character; and unless this can be found by the court, it is its duty to reject him. It is true that no statute has provided for any such complaint, prosecution or protest, and yet every one must feel that it is the duty of every lawyer at least, and perhaps of every citizen who has knowledge of facts that would render the admission of an applicant improper, to call the attention of the court to the subject, that due investigation might be had.
But if it be done, the difficult question still remain^: Is such communication, when made, absolutely privileged? We concede that this doctrine ought not to be extended by the courts. One who falsely and maliciously accuses another 'of crime, should suffer the penalty, unless he is shielded by another principle of law, viz : that public policy demands that those who so act shall be exem pt from an action for libel or slander for so doing, leaving them otherwise responsible for their conduct. After considerable hesitation, we are of the opinion that the question should be answered in the affirmative. That a case like this is clearly within the spirit, if not the letter, of the established rule. The court acting in a judicial capacity, and in a matter in regard to which it had complete jurisdiction, with inherent power to settle the question, by hearing testimony or otherwise, as to the character of an applicant for admission to the Bar, receives from a lawyer a communication *21 relevant to that question, and accepts and acts upon it. This state of fact being shown or admitted in the case, we think made the communication an absolutely privileged one. It seems to come within the doctrine stated in Starkie on Slander 266, Sec. 206 : “And the same rule,” (of absolute privilege} “obtains where application is made in the usual course to a. magistrate or other peace officer; as in a case where the defendant went to a Justice of the Peace for a warrant against the plaintiff for stealing his ropes. The Justice said, “Be advised and look what you do,” and the defendant replied, “I will charge him with flat felony for stealing my ropes from my shopit was held that these words being spoken to a-Justice of the Peace when the defendant came for his warrant,, which was lawful, were not actionable, for if they were, no one-would come to a Justice of the Peace to inform him .of a felony.”
John E. Smith, J. L. Wilson and Mr. Stanley, for plaintiff in error.
A. M. Lewis, for defendant in error.
In 19th Wisconsin, 82, it was held that “proceedings upon a petition to the governor for the removal of a sheriff from office, are quasi judicial, and statements made in such petition, if pertinent, are absolutely privileged ; and no action for libel founded upon them can be maintained.”
It is urged against this view, that unless an action for libel can be maintained, the plaintiff would be without redress, although the charges were false and malicious, This may be so, but we do not understand that this is the test of liability.A person thus slandered may have no other remedy, and yet be unable to maintain this kind of an action. But it is not at all sure that in a case^like this he has no other remedy. It has been lately held by the Supreme Court in the case ofPope. v. Pollock, Law Bulletin, vol. 21, page 208, that an action may be maintained for maliciously and without probable cause instituting an action in forcible entry and detainer.”' This being so, such action might lie also in a case like the one under consideration. But however this may be, we hold,, on the grounds before stated, that the Court of Common PleaSi erred in its ruling on the question presented, and that the the judgment should be reversed.